Wright, J.,
delivered the opinion of the Court.
This is an application to correct a mistake made in a decree in this cause, pronounced by this Court, at its December Term, 1857. This cause came first before this Court, at its December Term, 1855, and is reported in *390 2 Sneed, 468, where it was held, that the sale of the slaves, Edmund, Caty and Elizabeth, by the decree of the Court of Chancery, under the Act of 1827, ch. 61, sec. 2, at the instance of the creditors of James Elliott, deceased, without having his legatees parties before the Court, was void, and that therefore, the defendant, Cochran, the purchaser, acquired no title' to said slaves. The complainants — the legatees — were allowed to recover said slaves with proper hire, but were required to refund the purchase money, so far as the same had been received by them, or appropriated to their use or benefit; and the cause was remanded, to the end, that all proper accounts might be taken, and the equities of the respective parties adjusted. When the cause came again by appeal, to this Court, at the term first above named, and on the 22d of January, 1858, a decree was given, wherein it was stated, “that it appeared to the satisfaction of the Court, that the decree of the Chancellor, in disallowing the complainants, hire for said slaves, was erroneous, the same not being sustained by the proof.” The decree of the Chancellor was, therefore, reversed, and the Clerk of this Court directed to re-state the account between the parties, and to charge the said Cochran for the hire of Edmund and Caty, at the rate of $80 per annum, toith interest at annual rests, from the time said Cochran took them in his possession, in February, 1837, down to the taking of the account; and to charge said Cochran with the hire of Elizabeth, also, at the rate of $30 per annum, with Wee interest, from the beginning of the year 1846, down to the taking of the account; and also that he should charge complainants with the money paid by said' Cochran, for said slaves, with simple interest thereon, *391 from the time lie paid the same, till the taking of said account; and that execution should issue for the balance, as found against either party. The clerk immediately re-states the account, and made a report, in which the money and interest to be credited to the defendant Cochran, were charged as directed in the decree; but as to the hire of the slaves, he not only omitted to calculate interest thereon at annual rests, but failed to charge the interest altogether, save for one year on each annual hire, the result of which was, that the balance, instead of being in favor of the complainant, was against them to the amount of $198.60. No exceptions were taken 'to the report: and on the 25th of January, three days after the original decree, a final decree was made in conformity to said report, ordering an execution to issue against the complainants, in favor of Cochran for the $198.60. It does not appear that this omission as to the interest, and its mode of calculation, was known to the parties, or their counsel, until after the adjournement of the term of the Court, at which the final decree was rendered ; and we are satisfied it was not. The mistake is apparent on inspection of the original and final decrees and the report, and was obviously made by the clerk in stating the account, and escaped the detection of this Court, in rendering the final decree.
This more clearly appears from the fact, that the clerk, in his'report, assumes to state the hire, with in terest thereon, at annual rests, from the periods fixed in the decree, and in precise conformity thereto; whereas, in reality, after stating the hire for each consecutive year, and the interest for one year on each annual hire, and that, the next after its accrual, he omits altogether, the *392 residue of the interest. And this Court, in its final decree, also assumes that the report of the clerk had been made as directed in the original decree, and that complainants had been credited for the hire of said slaves, with interest on the same, at annual rests.
On the 15th of March, 1858, after the term of the Court had passed, complainants, having discovered the mistake, obtained from one of the Judges of this Court, a supersedeas to stay the execution of the decree, and at the following term, made application to have the said mistake corrected, and which application has been held under advisement until this time. And the question is; whether this Court has the power to correct said mistake? We are of opinion we have. In the Act of 1856, ch. 70, sec. 2, it is declared, that the Circuit Court, Chancery, and Supreme Courts of this State, shall hereafter have power to correct all mistakes apparent upon the face of the record, at any term after final judgment, said power to be exercised at the discretion of said Courts. This section, with some change of phraseology, is carried into the Code, at sections 2877 and 2878: section 2877 provides that the Circuit, Chancery, and Supreme Courts may, at any time within twelve months after final judgment or decree, and while the cause is still in such Courts, amend any clerical error, mistake in the calculation of interest, or other mistake or omission in the judgment or decree, when there is sufficient matter apparent on the record, the papers in the cause, or entries of a presiding Judge, to amend by ; and section 2878, that every mistake apparent on the face of the record may be corrected by the Court of any term, after final judgment, at the discretion of the Court. The next *393 section of the Code, as well as the Act of 1856, makes provision for giving the adverse party, notice of the intended application to correct the mistake, where the canso has been finally disposed of, and the parties are therefore not before the Court.
The case now before ns having originated anterior to the Code, must be decided upon the law as it existed when it took effect; and we will not now determine whether, in legal effect, there be any difference between its provisions, and the Act of 1856. We do not perceive, that the common law powers of this Court have been enlarged by this latter Act; and whether they have been abridged or not, we need not decide, as it seems to us, the correction now sought is allowable, both by the Act and the common law. The alteration of the records of this Court, involves much of delicacy, and should be cautiously and sparingly made. No appeal lies from its judgments or decrees, nor can they be reviewed or reheard after the adjournment of the term at which they are pronounced. Overton vs. Biglow’s Adm’r., 10 Yerger, 48-53. There must, of necessity, be an end to litigation somewhere. To permit them to be opened again and' again, and discussed as often as a real or imaginary error in the judgment of the Court, in point of law, or in conclusions of fact, might be discovered, would be intolerably vexatious. As to grievances and complaints of this sort?' the judgments and decrees of this Court must necessarily be final. But, upon principle, it has always been allowed to correct the mere mistake of the Cleric, where it was apparent upon the face of the record. Lord Mansfield states the distinction in Short vs. Coffin, Ex’r., 5 Burrow, 2730. The case of Rees vs. Morgan, 3 T. R., *394 349, in the Court of King's Bench, and the cases of Burr vs. Reeve, 1 Johns. R., 507 ; Close vs. Gillespie, 3 do., 526; and the Mechanic’s Bank vs. Minthorne, 19 do., must have gone upon the same distinction. So also the cases in our own reports, of Farris vs. Kilpatrick, 1 Hump., 379; and Ridgeway et als. vs. Ward, 4 do., 430. In Burr vs. Reeve, the motion was to vacate the assessment of damages made by the GlerJc, and that he be ordered to assess the same anew, there being an evident mistake in the calculation. The Court declared the mistake was apparent, and must be corrected. In the Mechanic’s Bank vs. Minthorne, after an interlocutory judgment on the default of the defendant for want of a plea, in an action against the endorser of a promissory note, the Clerk of the Court made a mistake in the assessment of the damages, by calculating the interest for one year less than the actual time, and the attorney of the plaintiff, without observing the mistake, filed the report of assessment, and entered final judgment thereon, and on receiving payment of the amount of damages and costs, according to such assessment, acknowledged . satisfaction of the judgment, which was entered of record ; but afterwards, on paying the money over to the plaintiff, the mistake was discovered, but the defendant refused to rectify it. The Court, on motion for that purpose, ordered the entry of satisfaction of the judgment, and all the proceedings in the case, subsequent to the interlocutory judgment, to be vacated, and the report of the Clerk of the assessment of damages, the record of the judgment, and the satisfaction thereof, to be taken off the files of the Court and canceled, and the damages to be re-assessed by the Clerk, allowing the defendant *395 credit for the amount paid by him. It seems to me, that these authorities, as well as the Act of 1856, sustain the motion to correct the mistake, and that the correction is an inevitable consequence of the decree of 1858: the report of the Clerk and the, final decree showing the error. As to the errors in the judgment of the Oourt, in point of law, existing in the decree upon which the report is based, or in unwarranted deductions of fact — if any such there be — complained of by the defendant’s counsel, they, upon the principles already stated in this opinion, are beyond our reach — the law of the decree, as well as its conclusions upon the testimony in the cause, constitute the deliberate judgment of this Oourt, in the case, and cannot now be changed. They do not stand upon the same ground as the clerical errors, or omissions of the clerk, the motion to correct must be allowed, but at complainants’ cost.